Stanley Edward MAXWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–192–CR.

Court of Appeals of Texas, Austin.

Aug. 31, 1988.

Gerald M. Brown, Carroll, Brown & Hibbs, Temple, Tex., for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, Tex., for appellee.

Before SHANNON, C.J., and GAMMAGE and ABOUSSIE, JJ.

**PER CURIAM.**

Stanley Edward Maxwell appeals his conviction by a jury for aggravated robbery. Tex.Pen.Code Ann. § 29.03(a)(2) (1974). The jury assessed punishment, enhanced by two prior felonies, at fifty years imprisonment. Finding no merit to the two grounds of error raised on appeal, we will affirm the judgment.

Appellant initially argues that the trial court erred in overruling his pre-trial motion to suppress the in-court identifications made by witnesses Hong Sik Kim and Heather Murray.

Hong Sik Kim testified that on March 12, 1987, he was working at the Polar Bear Ashburn Ice Cream parlor when two black men entered the shop at around 8:00 p.m. The only other person in the shop at the time was Heather Murray, a friend of Kim's. One of the men, later identified as Steven Dale Montgomery, ordered an ice cream at the counter, paid for it, and went into the restroom. The other man, identified at trial as appellant, looked around the store then ordered an ice cream. A short time later, Montgomery returned from the restroom and pointed a gun at Kim, while appellant walked around to the back of the counter and, began to look for cash under the cash register. After the two men had taken money from the cash register, they locked Kim in a refrigeration vault and left the store. Kim testified that the robbers were in the store for 15 to 20 minutes. After waiting in the vault for 10 minutes, he came out and called the police. He also called Murray, who had left the shop before the robbery occurred, and asked her to come back. Both gave statements to the police describing the suspects and a suspect vehicle.

Within an hour of the robbery, police spotted a parked vehicle which matched the description given by the witnesses and observed a black male exit the vehicle. When appellant and Montgomery got into the vehicle and drove off, the police stopped them and asked them to come to the police station for an identification.

Kim testified at the suppression hearing that when the police arrived at the ice cream shop, he had been able to describe the weight differences between the two robbers, but was unable to describe their clothing or other identifying characteristics with certainty. Less than an hour after the robbery, Kim was called by the police

and asked to come to the police station. He was told that the police had custody of two men who fit the descriptions of the men who had robbed him. Kim testified that his friend Murray was at the police station when he arrived and that before he was asked to identify the suspects, he spoke with her about what had happened. Kim then viewed appellant and Montgomery through a one-way mirror. Thirty to sixty seconds later he identified the two as the perpetrators.

Kim testified at the suppression hearing that at the time the robbery took place, the shop was well lit. He stated that he had no difficulty seeing the two men, and that the man he identified as appellant had at times been closer than 8 feet away from him. He testified at the hearing that his identification of appellant was based solely upon his observations at the time of the robbery; that no one at the police station suggested to him that he needed to identify the two men in custody; and that he had never identified anyone else as being the perpetrator of the offense.

Heather Murray, who had been in the ice cream shop at the time appellant and Montgomery came in and remained there for five to ten minutes before leaving, testified that twenty minutes after she reached her home, she was called back to the shop to talk to the police. Thereafter, she was taken to the police station where she viewed two men on a television video monitor. She complained that she could not see the suspects well enough to make the identifications, and asked for a closer view. She was then taken to a room where she viewed the suspects through a one-way mirror and was then able to identify appellant and Montgomery as the perpetrators. She testified that during the commission of the offense, she had been as close as ten feet away from the robbers and described appellant as the taller and thinner of the two, weighing about 210 pounds, with a bit of a scraggly beard, and as wearing a dark gray leather jacket. She testified that both men kept looking back at her while they were standing in front of the counter and that she got a good look at each before she left the shop. Murray testified that her ability to identify appellant was based solely upon her observations of him at the ice cream shop and that she had never identified anyone else as the perpetrator of the offense.

■ Appellant contends that the show-up identification procedure employed by the police was impermissibly suggestive and gave rise to a substantial likelihood of misidentification of appellant at trial, and that Kim and Murray should have been prohibited from making the in-court identification. Appellant argues that Kim was brought to the police station with the expectation that the two suspects he would see there would be the two robbers and that the very nature of a one-on-one show-up is suggestive.

Neither witness testified at trial as to their prior out-of-court identification of the suspects.

Appellant acknowledges that even where a pretrial identification is impermissibly suggestive, an in-court identification may still be admissible so long as a witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification. *Jackson v. State*, 657 S.W.2d 123 (Tex.Cr.App.1983); *Benson v. State*, 487 S.W.2d 117 (Tex.Cr. App.1972). To that end, he argues that disparities between the descriptions of the perpetrators the witnesses gave the police immediately after the offense occurred and the descriptions contained on the police arrest report demonstrate that the witnesses' observations at the scene of the offense were inadequate to support their in-court identifications. The arrest report described appellant as a black male, 6 feet tall, weighing 160 pounds, with a mustache, gold teeth, and wearing jewelry. Neither of the witnesses, appellant points out, re- called that appellant had a mustache, gold teeth, or jewelry. Murray described appellant as weighing 210 pounds, and as having a scraggly beard.

Assuming without deciding that the one-on-one show-up was impermissibly suggestive, we find that the witnesses' in-court identifications of appellant were sufficient-

ly reliable to be admissible. The Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) held that even if an identification procedure is impermissibly suggestive, the admission of identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability. The Court reiterated that the *totality of the circumstances* must be reviewed and that various factors should be considered. · Among those factors are: (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witnesses' level of certainty, and (5) the time between the crime and the confrontation. *Jackson v. State, supra; Garza v. State,* 633 S.W.2d 508, 511 (Tex.Cr.App.1982) (opinion on rehearing).

Here, both witnesses testified that they had sufficient opportunity to view the robbers in a well-lit setting, each was quite certain of his identification of the suspects, and the confrontation took place within an hour and a half of the robbery. Under these circumstances, we decline to hold that there was a substantial likelihood of misidentification, the witnesses' inability to recall certain details of the perpetrators' appearances notwithstanding. Any infirmities in the witnesses' recollections of such identifying features would go to the weight to be afforded the identification testimony and not to its admissibility. *Garza v. State, supra. Martinez v. State,* 507 S.W. 2d 223 (Tex.Cr.App.1974). The point of error is overruled.

■■■ In a supplemental brief, which this Court granted leave to file, appellant raises an additional point of error relating to the insufficiency of the evidence. The jury was charged to find appellant guilty of aggravated robbery if it found that during the course of committing theft "he did then and there by using *and* exhibiting a deadly weapon, to wit, a firearm, intentionally or knowingly threaten and place Hong Sik Kim in fear of imminent bodily injury or death (emphasis added)." The evidence showed that Montgomery exhibited a gun during the robbery; appellant's liability for Montgomery's acts attaching pursuant to the law of parties. Tex.Pen.Code Ann. § 7.02 (1974). Appellant's argument is that the evidence shows that the firearm was only *exhibited* and not *used,* thus the evidence is insufficient to support the verdict given the wording of the charge. *See Boozer v. State,* 717 S.W.2d 608, 611 (Tex. Cr.App.1984); *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1982). Appellant cites *Martinez v. State,* 641 S.W.2d 526 (Tex.Cr. App.1982) for the proposition that the words "use" and "exhibit," neither of which is defined in the Penal Code, are not synonymous, and that by employing the phrase "use or exhibit" in § 29.03(a)(2) the Legislature intended that the two words be given separate effect.

That portion of *Martinez* on which appellant relies was not supported by a majority of the Court of Criminal Appeals. Five judges declined to join the language in question, and four of them expressly dissented. We find persuasive the dissenting opinion of Judge Clinton, in which it is observed that the essential element of aggravated robbery is the threat or engendered fear of imminent bodily injury or death generated simply by the *presence* of a deadly weapon, its use or exhibition being merely incidental to its presence. As Judge Clinton points out, the words "use" and "exhibit" have variously been used conjunctively, interchangeably, and disjunctively, and no artificial distinction between the two should be imposed.

The instant cause is a good example of the interchangeable use of the two words. Here, by means of its *exhibition* during the course of the robbery, the gun was *used* to put the victim in fear of imminent bodily injury or death—the aggravating element of the offense. Thus, evidence that the gun was exhibited was also evidence of its use, and no disparity exists between the charge and the proof. The point of error is overruled.

The judgment is affirmed.