COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
CHARLES RAY DREWERY,                         )                  No. 08-04-00201-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  344th District Court
)
THE STATE OF TEXAS,                                   )                  of Chambers County, Texas
)
                                    Appellee.                          )                  (TC# 12845)

O P I N I O N

            Charles Ray Drewery appeals his conviction for aggravated robbery. A jury found Appellant
guilty and sentenced him to sixty years’ imprisonment. Finding no error, we affirm.
FACTUAL SUMMARY
            In December 1998, Betty Irby was working at Eagle Stop #2 in Chambers County. Around
1 p.m. on December 15, a white man wearing a flannel shirt over a T-shirt entered the store, walked
around a bit, went to the back and grabbed two beers. He approached the register and spoke to Irby
about different prices, paid for the beer, and left. During their conversation, the man held a cigar in
his hands and then in his mouth. He was in the store for approximately three to five minutes. Irby
went to the back of the store and was stocking boxes when the man returned. Irby said, “I will be
right there.” The man said he had forgotten cigarettes. The cigarettes were to the left of the register,
so Irby grabbed the cigarettes, rang them up, and told the man how much he owed. 
            The man said, “I want your money.” Irby did not really snap to what he had said. She looked
at him and he repeated, “I want your money.” Irby saw a small black-handled gun in the man’s
waistband since his shirt was opened and he pulled it to the side. The man never took the gun out
of his waistband. Irby had trouble opening the cash drawer since she was scared. The man told Irby
he was not playing. When Irby got the drawer open, the man reached over and took the money. He
told Irby to go to the back of the store and into the office. Irby told him that the office was locked,
and he told her to go as far back as she could. 
            Irby then turned her back and walked away. She thought the man was going to shoot her. 
When she heard the door close, she looked out the window and saw a truck driving toward the
courthouse. During the robbery, the man left his cigar on the counter. Irby insisted that no one else
had left the cigar. 
            Irby called her boss and Sheriff’s Investigator Virgil Blasdel and Patrol Deputy Steve
Ferguson arrived in response to the aggravated robbery. Irby pointed out the cigar and Blasdel
mailed it to the Department of Public Safety’s crime lab in Austin. 
            At trial, the State showed Irby a handgun marked as State’s Exhibit # 3. Irby admitted that
the exhibit was not the actual gun used in the robbery but said that it was similar to the one she saw
in the robber’s waistband. Irby did not know much about guns, did not like them, and did not own
one. She acknowledged that there was no way to determine whether the gun was real or fake, but
she believed it was real. Irby identified Appellant as the man who robbed the store. 
            Michael Wheat, who worked for the Chambers County Sheriff’s Department in 2003,
received a tip pointing to Appellant as a suspect in the robbery. Wheat procured a search warrant
for DNA evidence and took buccal swabs from Appellant. He then transported the swabs to the DPS
crime lab in Austin. Debora Furman, a criminalist with DPS, tested the cigar. She took a sterile
swab and sterile water and swabbed the cigar to collect any biological evidence on the object. Jane
Burgett, a DNA analyst for DPS, retrieved the swab from the cigar, ran a DNA analysis, and created
a profile. Burgett also analyzed one of the buccal swabs from Appellant. She then compared her
analyses on the two items and found the DNA profile on the cigar tip to be consistent with the DNA
profile of Appellant. The probability of finding the same profile in an unrelated population was 1
in 2.499 quintillion. She testified that to a reasonable degree of scientific certainty, and excluding
identical twins, the DNA on the cigar came from Appellant. 
SUFFICIENCY OF THE EVIDENCE
            In Points of Error One and Two, Appellant challenges the legal and factual sufficiency of the
evidence to prove beyond a reasonable doubt that he was the robber. In Points of Error Three and
Four, he complains that the evidence is legally and factually insufficient to prove that he used or
exhibited a firearm. 
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997). 
Aggravated Robbery
            Aggravated robbery is a felony of the first degree. A person commits aggravated robbery if
he commits an offense of robbery as defined in Section 29.02, and he: (1) causes serious bodily
injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person
or threatens or places another person in fear of imminent bodily injury or death. Tex.Penal Code
Ann. § 29.03 (Vernon 2003). A deadly weapon is defined as: (A) a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B)
anything that in the manner of its use or intended use is capable of causing death or serious bodily
injury. Tex.Penal Code Ann. § 1.07(17)(A) and (B)(Vernon Supp. 2004-05). 
Identity
            First, we examine the sufficiency of the evidence of identity. Appellant concedes that Irby’s
in court identification and the DNA match between the swab from the cigar and the buccal swab
constitute some evidence that he was the robber. However, he contends that the evidence is also
consistent with an alternative hypothesis. He might have entered the store, purchased the beer, and
left, leaving his cigar on the counter. Then, another man might have entered and robbed Irby. Since
Irby had just seen Appellant, she might have easily remembered Appellant and mistakenly identified
him at trial as the robber.
            We perceive this argument as the “alternative reasonable hypothesis” construct which was
rejected in Geesa, 820 S.W.2d at 160-61. Under that construct, legal sufficiency of circumstantial
evidence was tested by whether the State had disproved every reasonable hypothesis raised by the
evidence except the defendant’s guilt. Porter v. State, 121 S.W.3d 404, 409 (Tex.App.--Amarillo
2003, pet. ref’d), citing Geesa, 820 S.W.2d at 156-59. That is, the evidence was tested not by what
the State proved, but by what the State failed to disprove. Id., citing Geesa, 820 S.W.2d at 156-59. 
 As noted, such standard has been rejected in legal sufficiency reviews. Id. 
            In a factual sufficiency analysis, the existence of alternative reasonable hypotheses raised by
the record may still be considered, but its existence is not determinative. Id., citing Wilson v. State,
7 S.W.3d 136, 141 (Tex.Crim.App. 1999). In Richardson v. State, 973 S.W.2d 384, 385-86
(Tex.App.--Dallas 1998, no pet.), the defendant, convicted of burglary, argued that the evidence was
factually insufficient because all of the evidence of intent was circumstantial. The court of appeals
noted that Richardson had presented no evidence of an alternative hypothesis at trial and had
attempted to raise an alternative hypothesis only through cross-examination of the State’s witnesses. 
Id. He was therefore requesting that the court review the evidence from the State’s case-in-chief to
determine whether any reasonable alternative hypothesis existed which would have precluded the
jury from finding him guilty beyond a reasonable doubt. Id. The court held that this was not the
proper standard of review for a factual sufficiency analysis. Id. Instead, a reviewing court must
necessarily consider any reasonable alternative reasonable hypotheses raised by the evidence since
the very nature of a factual sufficiency review requires the court to consider all of the evidence
presented at trial and not just that which is favorable to the verdict. Id. at 387, citing Cain, 958
S.W.2d at 408. If the evidence suggests the existence of a reasonable alternative reasonable
hypothesis, then the court cannot ignore it, but the mere existence of an alternative reasonable
hypothesis does not render the evidence factually insufficient. Id. Even when a defendant identifies
an alternative reasonable hypothesis raised by the evidence, the standard of review remains the same,
and a verdict may be overturned only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Id., citing Clewis, 922 S.W.2d at 129. The verdict cannot be
reversed if reasonable minds could differ about the conclusions to be drawn from the evidence. Id.,
citing Scott v. State, 934 S.W.2d 396, 399 (Tex.App.--Dallas 1996, no pet.).
            Reviewing all the evidence, both State and defense, in the light most favorable to the verdict,
we conclude that any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. The evidence of identification is legally sufficient. The jury, as the fact
finder, resolved conflicts in the evidence, weighed the evidence, and drew reasonable inferences
from the evidence. We overrule Point of Error One.
            After objectively reviewing all the evidence presented, including Appellant’s alternative
reasonable hypothesis, we conclude that the evidence is also factually sufficient to support the
verdict of guilt. Irby had an adequate time during which to observe Appellant before and during the
robbery. She testified that Appellant was wearing the same clothes during both entries into the store. 
She noticed Appellant’s cigar upon his first entry and it was still on the counter after the robbery. 
Appellant’s DNA matched the DNA found on the cigar. While it is true that Appellant could have
left his cigar on the counter when he purchased the beer and another man entered the store after him, 
the jury was entitled to believe all, some, or none of his testimony. We overrule Point of Error Two. 
                                             Use or Exhibition of a Deadly Weapon
            In Points of Error Three and Four, Appellant complains that the evidence is legally and
factually insufficient to prove that he used or exhibited a firearm. He contends that Irby admitted
that the gun in his waistband could have been fake. She only saw the handle of the gun and did not
know the size of the gun. She did not like guns, did not own a gun, and had never seen a gun. The
robber never took the gun out of his waistband and the actual gun was not offered into evidence.
            A person commits aggravated robbery if he commits robbery as defined in Section 29.02 and
he uses or exhibits a deadly weapon. Tex.Penal Code Ann. § 29.03(a)(2). The essential element
of an aggravated robbery is the threat or fear of imminent bodily injury or death “generated simply
by the presence of a deadly weapon, its use or exhibition being merely incidental to its presence.” 
Maxwell v. State, 756 S.W.2d 855, 858 (Tex.App.--Austin 1988, pet. ref’d). A defendant does not
have to display a deadly weapon to the victim in order to establish a threat to do imminent bodily
injury. Heathcoat v. State, 709 S.W.2d 303, 304 (Tex.App.--San Antonio 1986, no pet.)(defendant
merely tapped gun in waistband of his pants and told complainant to give him money). It is not
necessary for a victim to see the entire weapon or any particular part of it to identify it as a pistol. 
Banda v. State, 758 S.W.2d 902, 903 (Tex.App.--Corpus Christi 1988, no pet.)(complainant saw
only portion of pistol handle). 
            In Jones v. State, the defendant walked into a bank and gave the teller a plastic bag telling
her “to put it all in there.” 810 S.W.2d 824, 826 (Tex.App.--Houston [14th Dist.] 1991, no pet.). 
The teller hesitated since she did not see a weapon. The defendant told her he would kill her if she
did not put the money in the bag and pulled his shirt aside to show her the butt of a gun stuck in his
waistband. Id. The court found the evidence to be both legally and factually sufficient to show that
the defendant used or exhibited a deadly weapon. The defendant had pulled aside his jacket to show
the teller the butt end of a pistol and had threatened to kill her if she did not remain quiet. Id. at 827. 
            Reviewing all the evidence, both State and defense, in the light most favorable to the verdict,
we conclude that any rational trier of fact could have found that Appellant used or exhibited a
firearm. During the robbery, Appellant pulled his shirt aside to show Irby the butt of a gun stuck in
his waistband. See Jones, 810 S.W.2d at 826. Irby admitted that Appellant never took the gun out
of his waistband, but a defendant need not display the weapon in order to establish a threat to do
imminent bodily harm. See Heathcoat, 709 S.W.2d at 304. Irby described the firearm as a small
black-handled gun even though she did not know much about guns, did not own one, and had never
seen one. Nevertheless, it is not necessary for the victim to see the entire weapon in order to identify
it. See Banda, 758 S.W.2d at 903. While Irby admitted that the gun could have been fake, she
believed that the gun was real and was afraid that Appellant would shoot her. The jury heard Irby’s
testimony regarding the gun’s description, and State’s Exhibit # 3 was admitted for demonstrative
purposes to give the jury an idea of what the gun used in the robbery looked like. Irby explained that
the gun was similar to the one used in the robbery. It was the function of the jury to resolve any
conflict of fact and assign credibility to the witnesses. We overrule Point of Error Three.
            Further, after objectively reviewing all the evidence presented, we conclude it is factually
sufficient to support a finding of use or exhibition of a deadly weapon. The verdict is not so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Point
of Error Four.
AFFIRMATIVE FINDING
            In Point of Error Five, Appellant argues that the trial court was without authority to add its
own deadly weapon finding to the judgment. The indictment charged Appellant with use and
exhibition of a deadly weapon (a firearm) during the commission of robbery. The application
paragraph of the jury instructions explained that Appellant had been so charged. The jury found
Appellant guilty of aggravated robbery as alleged in the indictment. The judgment included an
“Affirmative finding by Jury and Court - Deadly Weapon.” 
            In order for the trial court to properly enter an affirmative deadly weapon finding in the
judgment, there must have been an “affirmative finding” by the jury. See Polk v. State, 693 S.W.2d
391, 394 (Tex.Crim.App. 1985). A jury makes an affirmative deadly weapon finding when the
indictment alleges the use of a deadly weapon and the jury’s verdict reads “guilty as charged in the
indictment.” Davis v. State, 897 S.W.2d 791, 793 (Tex.Crim.App. 1995); Polk, 693 S.W.2d at 394. 
Here, the jury found Appellant guilty as alleged in the indictment, and the indictment alleged
Appellant committed aggravated robbery by using or exhibiting a deadly weapon, to wit: a firearm. 
Once the jury makes an affirmative finding, the trial court shall enter this finding in the judgment. 
See Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2)(Vernon Pamphlet 2004-05). Entering the
affirmative finding is mandatory and the trial court has no discretion. See State ex rel. Esparza v.
Paxson, 855 S.W.2d 170, 172 (Tex.App.--El Paso 1993, no pet.). We overrule Point of Error Five.
JURY INQUIRY
            In Point of Error Six, Appellant contends that the trial court erred by refusing to answer “yes”
to a jury note asking whether it must be proven that the gun was real to convict Appellant of
aggravated robbery. In Point of Error Seven, he argues that the trial court erred when it refused to
direct the jury to the definition of “firearm” in the charge.
            The Code of Criminal Procedure regulates communications between the court and jurors
during deliberations. See Tex.Code Crim.Proc.Ann. art. 36.27 (Vernon 1981). After the jury
retires to deliberate, the trial court can give additional jury instructions in writing and, to the extent
possible, with the defendant and his counsel present in order to make objections. Id.; Revell v. State,
885 S.W.2d 206, 211 (Tex.App.--Dallas 1994, pet. ref’d). Questions from the jury must be in
writing submitted through the bailiff, and answers must be given in writing and read in open court
in front of the defendant and defense counsel. See Tex.Code Crim.Proc.Ann. art. 36.27. If the
request from a jury for additional instructions is not proper, the court should refer the jury to the
court’s charge. See Gamblin v. State, 476 S.W.2d 18, 20 (Tex.Crim.App. 1972). Review of a trial
court’s response to such a request is governed by the abuse of discretion standard. Tex.Code Crim.
Proc.Ann. art. 36.28 (Vernon 1981); see Moore v. State, 874 S.W.2d 671, 674 (Tex.Crim.App.
1994). 
            Appellant argues that by failing to respond in the affirmative to the jury’s question and failing
to direct them to the definition of firearm, the trial court authorized the jury to convict him of
aggravated robbery even if the jury did not find beyond a reasonable doubt that he had used or
exhibited a firearm. The court had already instructed the jury that a person commits aggravated
robbery by using or exhibiting a deadly weapon and had explained that a firearm was a deadly
weapon. We cannot conclude that the trial court’s response to the jury’s note was erroneous or that
Appellant was harmed by it. Points of Error Six and Seven are overruled.
MOTION TO SUPPRESS
            In Point of Error Eight, Appellant claims that the trial court erred in denying his amended
motion to suppress the DNA analysis. In Points of Error Nine, and Ten, he suggests that the forced
extraction of his blood was an unreasonable search and seizure under the 4th Amendment of the
United States Constitution and under article I, section 9 of the Texas Constitution. 
Standard of Review 
            We review the trial court’s ruling on a motion to suppress evidence for an abuse of discretion. 
Long v. State, 823 S.W.2d 259, 277 (Tex.Crim.App. 1991), cert. denied, 505 U.S. 1224, 112 S.Ct.
3042, 120 L.Ed.2d 910 (1992). At a suppression hearing, the trial judge is the sole finder of fact and
is free to believe or disbelieve any or all of the evidence presented. Id. We give almost total
deference to the trial court’s determination of historical facts that depend on credibility and
demeanor, but review de novo the trial court’s application of the law to the facts if resolution of those
ultimate questions does not turn on the evaluation of credibility and demeanor. See Guzman v. State,
955 S.W.2d 85, 89 (Tex.Crim.App. 1997). 
            A pretrial hearing was held on Appellant’s motion to suppress which challenged the taking
of his DNA without his consent. Appellant testified that he had previously been in the Texas
Department of Criminal Justice Institutional Division (TDC) in 1990 and 2002. He remembered his
blood being taken for the last time in 2002 at the Byrd Unit in Huntsville. Appellant was told that
the blood was being taken for all purposes, including DNA testing, and that he had to give the
sample. Appellant was then later called back to have his blood taken again. Appellant admitted that
there were problems with disease in TDC including tuberculosis, AIDS, and hepatitis, and that the
only way to protect against the diseases was to test for them. 
            In early 2003, swabs of Appellant’s mouth were taken. Appellant was not given a choice as
to whether he wanted the swab taken and he was told there was a warrant. Captain Michael Wheat
testified that he first met Appellant at the Fort Bend County Jester III unit when he went to execute
a search warrant for four buccal swabs of Appellant’s saliva. Wheat explained to Appellant that he
had a warrant to take the samples, how they were to be taken, and why--Appellant was a suspect in
a robbery in Chambers County. Appellant was told that evidence (a cigar) was left at the scene, and
Appellant replied, “That was stupid.” Wheat admitted that no warnings were given but explained
that Appellant’s statement was not in response to a question and that Appellant in fact refused to
discuss the case with him. 
            Debora Furman examined the cigar found at the scene to collect saliva deposited on the tip. 
Biological evidence was collected from the cigar and placed in a secure freezer. No stain was
visualized. Furman was later notified that there was a hit. Jane Burgett explained that CODIS is
a Combined DNA Index System collected from suspected offenders and evidentiary samples. 
Developed DNA profiles from evidentiary items are entered and compared to known profiles in the
database. Burgett tested the buccal swabs from Appellant. 
            While Appellant has not challenged the taking of the swab, he nevertheless maintains that
the previous extraction of his blood was unconstitutional since it was used to obtain the swab warrant
as a result of a CODIS match. Relying upon United States v. Kincade, 345 F.3d 1095 (2003), rev’d
by, 379 F.3d 813 (9th Cir. 2004), he argues that the forced extraction of blood for DNA testing
absent individualized suspicion that the extraction will produce evidence of a crime is
constitutionally prohibited. He readily concedes that Kincade has been reversed and that contrary
authority exists. 
            The extraction of blood from a prisoner to collect a DNA sample implicates Fourth
Amendment rights. See Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 616, 109 S.Ct.
1402, 103 L.Ed.2d 639 (1989). Nonetheless, collection of DNA from prisoners has been found to
be reasonable in light of an inmate’s diminished privacy rights, the minimal intrusion involved, and
the legitimate government interest in using DNA to investigate crime. See Groceman v. U.S. Dept.
of Justice, 354 F.3d 411, 413 (5th Cir. 2004); Velasquez v. Woods, 329 F.3d 420 (5th Cir. 2003)(per
curiam). Id. Courts may consider the totality of circumstances, including a person’s status as an
inmate or probationer, in determining whether his reasonable expectation of privacy is outweighed
by other factors. See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497
(2001). Persons incarcerated after conviction retain no constitutional privacy interest against their
correct identification. See United States v. Sanders, 477 F.2d 112, 113 (5th Cir. 1973).
            We find no abuse of discretion in the denial of Appellant’s motion to suppress. Points of
Error Eight, Nine, and Ten are overruled.
STACKING SENTENCES
            The State filed a motion to cumulate Appellant’s sentence. In the judgment, the trial court
specified that Appellant’s sentence would begin when he had served the twenty-five year sentence
he received in Harris County in 1990 for burglary of a building. In Point of Error Eleven, Appellant
asserts that the trial court abused its discretion by ordering that his sentence be stacked on the
sentence he was currently serving.
            A trial court is vested with the discretion to order two or more sentences to operate
either concurrently or consecutively. Tex.Code Crim.Proc.Ann. art. 42.08(a)(Vernon Pamphlet
2004-05); Hester v. State, 544 S.W.2d 129, 137 (Tex.Crim.App. 1976). A complaint about
consecutive sentences is reviewed under an abuse of discretion standard. Macri v. State, 12 S.W.3d
505, 511 (Tex.App.--San Antonio 1999, pet. ref’d). The test for abuse of discretion is whether the
trial court’s action falls within the zone of reasonable disagreement. Manning v. State, 114 S.W.3d
922, 926 (Tex.Crim.App. 2003). Because we perceive no abuse of discretion, we overrule Point of
Error Eleven and affirm the judgment below.

July 28, 2005                                                               
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)