COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| TERRELL RAY JACKSON, | § | No. 08-09-00212-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 297th District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
|  | § |  |
| Appellee. | § | (TC # 1107658D) |
|  | § |  |

## O P I N I O N

A jury convicted Terrell Ray Jackson of aggravated robbery with a deadly weapon and he was sentenced by the trial court to life imprisonment together with a $10,000 fine.[1]  In two points of error, Appellant complains that (1) the trial court abused its discretion by failing to suppress his identification by two eyewitnesses because they were impermissibly tainted by improper pretrial procedure; and (2) the evidence is both legally and factually insufficient to prove identity without the allegedly tainted identifications.  For the reasons that follow, we affirm.

### FACTUAL SUMMARY

On April 2, 2008, at approximately 9:30 a.m., two men entered and robbed Sanjay Mehta's convenience store.  The men were described as black males, early twenties, and one was wearing a hooded sweatshirt and carrying a gun. The man with the gun--later identified as Appellant--crossed over the counter, pointed the gun at Mehta, and ordered him to open the cash register.  Mehta

---

[1] Appellant was indicted and convicted on two aggravated robbery charges which were consolidated into a single trial.  The jury found him guilty of both charges and he was sentenced to life imprisonment and a $10,000 fine for each charge.  The judge elected to have the sentences run concurrently.  Appellant appeals each charge separately but in identical briefs.  A separate opinion will be issued for each appeal.

complied. With the gun still pointed at Mehta, Appellant ordered him to get on the ground. Again, Mehta complied. Mehta heard the man put the entire cash register drawer into what was described as a black trash bag. Appellant also took Mehta's wallet and cell phone. Meanwhile, Appellant's companion went through the store taking cigarettes, small novelty items, and knives.

Kevin Pool, a regular customer and local fireman, then entered the store. He immediately saw the men were robbing the place. Appellant pointed his gun at Pool and ordered him to get down, but Pool turned and ran instead. A shot was fired in Pool's direction, missing him but striking his vehicle parked outside. Mr. Wicker, a postal worker, was standing on a corner across the street having a cigarette when he heard the gunshot. He then headed toward the store as Pool ran by, telling him a robbery was in progress. Wicker positioned his body behind a pole but kept his eyes on the store as he called 911. He was approximately 100 feet from the entrance. He saw one man wearing a hooded sweatshirt and carrying a black trash bag exit the store and climb into the passenger side of a light blue vehicle. The car head north on Heights Street. Wicker was talking with the 911 operator as these events unfolded and he related each of them to the operator as they occurred. Wicker momentarily lost sight of the car as it made a left turn on Heights, but he soon spotted it coming back toward him a few streets over. Wicker was certain the car he observed leaving the store was the same one which the police pursued.

Officers Thompson and Wallace were only blocks away when they received a dispatch of a robbery with shots fired. The dispatch advised that the suspects were two black males driving a blue four door vehicle west on Main. The officers immediately got into their respective patrol cars and headed toward the crime scene. At the corner of Eagle and Main, the officers spotted the suspects. The officers quickly made U-turns and a chase ensued for several blocks, picking up additional patrol cars along the way. Appellant's companion lost control of the car and ran into a ditch. The

two men exited the car and began to run. One ducked behind a house and was apprehended. Appellant pulled a gun from his waistband, dropped it to the ground, hopped a fence and took off toward some nearby soccer fields. Officers Wenman and Wallace pursued Appellant on foot and were able to apprehend him. The total time lapse between the initial 911 call and the apprehension was approximately thirty minutes.

After police arrested the two men, they were handcuffed, placed in the back of separate squad cars, and taken to the convenience store to see if Mehta or Pool could identify them. When Appellant stepped outside of the car, Mehta quickly identified him as the man with the gun. A second positive identification was subsequently made by Pool. Neither Mehta nor Pool observed or overheard the other's identification.

All of the items stolen from the convenience store, including Mehta's wallet, were found in the blue car. A ballistics expert matched the bullet found lodged in Pool's car to the gun Appellant ditched before jumping the fence.

Appellant was charged with the felony offense of aggravated robbery. He filed a motion to suppress the pretrial and in-court identifications. After a hearing, the trial court found that, based on the totality of the circumstances, the identifications were not impermissibly suggestive and denied the motion to suppress.

**MOTION TO SUPPRESS**

We review a trial court's ruling on a motion to suppress on the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). This standard includes review of a motion to suppress evidence based on a claim that an in-court identification should not have been admitted due to the taint of an impermissibly suggestive pretrial identification procedure. *See Loserth v. State*, 963 S.W.2d 770, 771 (Tex.Crim.App. 1998). We give almost total deference to a trial court's ruling on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). We review *de novo* mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses. *Id.*; *Guzman*, 955 S.W.2d at 88-89.

A pretrial identification procedure may be so impermissibly suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex.Crim.App. 1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). Whether an identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification is a mixed question of law and fact which does not turn on an evaluation of credibility and demeanor. *Loserth*, 963 S.W.2d at 772-73. Accordingly we apply a *de novo* standard of review.

*Identification*

A two-step analysis is used to determine admissibility of an in-court identification. *Delk v. State*, 855 S.W.2d 700, 706 (Tex.Crim.App. 1993). First, we examine whether the pretrial identification procedure was impermissibly suggestive. *Id*. at 706. Second, if we conclude the identification was the result of an impermissibly suggestive procedure, then we examine the totality

of the circumstances to determine whether the impermissibly suggestive procedure gives rise to a very substantial likelihood of irreparable misidentification. *Id.*

While an in-field show-up identification is not *per se* a violation of due process, the courts have expressed concern and noted such procedures can be problematic. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App. 1982)(Opin. on reh'g); *Scranton v. State*, No. 2-09-242, 2010 WL 2721483, at *6 (Tex.App.--Fort Worth 2010, pet. filed)(not designated for publication); *Stewart v. State*, 198 S.W.3d 60, 63 (Tex.App.--Fort Worth 2006, no pet.). For purposes of this analysis, we assume without deciding that the show-up was impermissibly suggestive and focus on whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *See Wilson v. State*, 267 S.W.3d 215, 217 (Tex.App.--Waco 2008, pet. ref'd). In assessing the reliability of the in-court identification, we weigh five nonexclusive factors against the corrupting effect of the unduly suggestive identification procedure: (1) the opportunity of a witness to view the criminal at the time of crime; (2) the witness's degree of attention; (3) the accuracy of witness's prior description of the criminal; (4) the level of certainty demonstrated by witness upon confrontation; and (5) the length of time between the crime and confrontation. *Garza,* 633 S.W.2d at 513; *Loserth*, 963 S.W.2d at 772. In weighing these factors, the burden is on the accused to show, by clear and convincing evidence, that the witness's identification was unreliable. *See Pace v. State*, 986 S.W.2d 740, 744 (Tex.App.--El Paso 1999, pet. ref'd).

*Analysis*

The trial court denied Appellant's motion to suppress Mehta and Pool's identification after hearing testimony from Mehta, Pool, and several officers from the Crowley Police Department. Both Mehta and Pool looked Appellant in the face and clearly observed his facial features. The robbery

occurred in broad daylight and both men viewed Appellant from only a few feet away. They both described him to police as a younger, black male, wearing a hooded sweatshirt, and carrying a gun. There were some inconsistencies regarding the color of the sweatshirt, but Appellant did discard a hooded sweatshirt before his apprehension. Inconsistencies in testimony go toward the weight and credibility of testimony. *See Martinez v. State*, 507 S.W.2d 223, 226 (Tex.Crim.App. 1974)(holding that the fact that a witness cannot be positive in her identification goes to the weight of the testimony, not its admissibility). Although neither witness saw Appellant for more than a minute or two, each paid attention. The show-up identification occurred within a short period of time after the robbery--only twenty or thirty minutes had elapsed. *See Pinkston v. State*, 744 S.W.2d 329, 334 (Tex.App.--Houston [1st Dist.] 1988, no pet.)(holding the fact that elderly aggravated robbery victims saw perpetrator for approximately 35 to 45 seconds of the approximately 45 minutes that he was in victims' house, and that one victim's glasses were knocked from his face went to weight of their in-court identifications and not to admissibility).

After being apprehended, Appellant and his cohort were brought back to the scene of the robbery in separate cars. Mehta and Pool separately identified Appellant. In fact, when the police brought Appellant back to the store, Mehta immediately identified him as the man who had robbed him at gun point. Both witnesses were certain about Appellant's identity. There was no evidence the police prompted either witness or made any suggestive comments provoking their identifications. We conclude the trial court did not abuse its discretion in ruling that the out-of-court identification procedure was not impermissibly suggestive such as to give rise to a very substantial likelihood of misidentification. We overrule Issue One.

## INSUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant challenges the legal and factual sufficiency of the evidence to

support his conviction. After the parties filed their briefs, the Court of Criminal Appeals held in *Brooks v. State* that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, --- S.W.3d ----, 2010 WL 3894613 (Tex.Crim.App. 2010). In light of *Brooks*, we will review only legal sufficiency.

Appellant maintains that the evidence is insufficient to prove his identity because the in-court identification was made based on impermissible pretrial identification procedures. Because we have found no abuse of discretion with regard to denial of the motion to suppress, the identification testimony was properly admitted. Testimony of either eyewitness, standing alone, would be considered legally sufficient to support the jury's conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex.Crim.App. 1971)(holding that testimony of eyewitness alone sufficient to support jury's verdict). However, even if the identification testimony had been suppressed, the evidence is legally sufficient.

*Standard of Review*

In reviewing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the verdict to determine whether, based on that evidence and any reasonable inferences therefrom, any rationale trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). This standard illustrates the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to

ultimate facts. *Jackson*, 443 U.S. at 318-19. We do not resolve any conflict of fact or reevaluate the weight and credibility of the evidence, nor may we substitute our own judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). When the record supports conflicting inferences, we presume that the fact finder resolved any inconsistencies in favor of the verdict and defer to such determination. *Clayton*, 235 S.W.3d at 778; *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). The same standard of review is applicable for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991), *overruled on other grounds*, *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App. 2000).

*Elements of Aggravated Robbery*

A person commits aggravated robbery if he commits robbery and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.03 (Vernon 2003). A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX.PENAL CODE ANN. § 1.07(a)(17)(A) and (B)(Vernon Supp. 2010). The essential element of an aggravated robbery is the threat or fear of imminent bodily injury or death "generated simply by the *presence* of a deadly weapon, its use or exhibition being merely incidental to its presence." *Maxwell v. State*, 756 S.W.2d 855, 858 (Tex.App.--Austin 1988, pet. ref'd). Specifically, the indictment alleged that Appellant:

INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN OR PLACE SANJAY MEHTA IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT: A FIREARM.

COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 2ND DAY OF APRIL 2008, DID INTENTIONALLY OR KNOWINGLY THREATEN IMMINENT BODILY INJURY TO KEVIN POOL AND THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE ASSAULT, TO-WIT: A FIREARM.

*Analysis*

Appellant's sole argument is that the identification testimony should have been suppressed, and without that testimony, the evidence is both legally and factually insufficient. However, even without the actual identification, Mehta testified that a man matching Appellant's description came into his store, pointed a gun at him, and demanded he open the cash register. He and Pool both testified that the robber shot at Pool when he ran from the store. Another witness watched a man carrying a black trash bag enter a light blue vehicle and drive away, only to be spotted by police officers at a nearby intersection. Several police officers testified they spotted the car at the intersection and chased it for several blocks until the car lost control and both occupants abandoned the vehicle and fled on foot. They also testified that Appellant pulled a gun from his waistband and discarded it before he was arrested. A ballistics expert matched the gun to the bullet fired during the robbery. He also testified that the gun met the legal definition of a firearm. Finally, all of the items stolen, including Mehta's wallet, cell phone, and cash register drawer, were found in the suspects' car. Reviewing all the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt and therefore the evidence is legally sufficient.  *See Hooper*, 214 S.W.3d at 13.

We overrule Issue Two and affirm the judgment of the trial court.


January 5, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

ANN CRAWFORD McCLURE, Justice