COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ANTHONY WAYNE SCOTT DAWKINS, | § | No. 08-09-00217-CR |
| Appellant, | § | Appeal from |
| | § | 396th District Court |
| v. | § | |
| | § | of Tarrant County, Texas |
| THE STATE OF TEXAS, | § | (TC # 1093246D) |
| Appellee. | § | |

**O P I N I O N**

Anthony Wayne Dawkins was charged by indictment with aggravated robbery with a deadly weapon (Count I) and aggravated assault with the same deadly weapon (Count II). A jury returned a verdict of guilty as to both counts and assessed punishment at twenty-five years' imprisonment per offense. Appellant was sentenced accordingly and ordered to serve his sentences concurrently. Appellant raises three issues on appeal. In Issues One and Two, he complains that the evidence was legally and factually insufficient to prove the elements of aggravated robbery and aggravated assault, respectively. In Issue Three, Appellant contends that his conviction for both offenses violates the Double Jeopardy Clause of the United States Constitution. For the reasons that follow, we reform the judgment in part and affirm as reformed.

## FACTUAL BACKGROUND

On October 10, 2007, at approximately 6 p.m., Christopher King went to his drug dealer's home to give him a haircut. King was unable to finish the haircut because of all the people constantly coming in and out of the house. He was asked to return later that night. Sometime after 1 a.m., King returned to the house, but his customer was not home. However, several other people were in the house doing drugs and gambling and King decided to play dice while he waited. At trial, King identified Appellant as one of the men who played in the dice game.

After gambling for fifteen or twenty minutes, King won a $2 pot. Appellant became angry and aggressively demanded King return his money. King refused. Appellant then left the house and returned a few minutes later with a handgun. Once again Appellant demanded King return his money and once again King refused. Appellant then shot King six times.

After the shooting, Appellant took the keys to King's car and left in the vehicle. Sometime later, a 9-1-1 call was placed and police and paramedics arrived on the scene. King was taken to the hospital where he was treated for his injuries. The police collected evidence including fingerprints from King's car, which were ultimately identified as Appellant's prints. Appellant was charged with aggravated robbery and aggravated assault with a deadly weapon in connection with the incident.

Officer Reyes testified that at approximately 6:15 a.m. on October 11, 2007, he was dispatched to a house on Asbury Avenue in Fort Worth, Texas, to investigate a possible shooting. Upon arrival, Reyes encountered the 9-1-1 caller in the front yard. The caller told Reyes that his friend was shot and inside the house. Reyes heard a male voice screaming, "Help me." The officers on the scene entered the home and found King lying on the floor bleeding from multiple bullet wounds. As soon as the officers cleared the room, Medstar arrived to treat King. Reyes testified that

from his expertise and experience, a firearm was used and a firearm is a deadly weapon. No weapon was found on King.

James Aycox, a paramedic with Medstar, testified that King had sustained six bullet wounds which were life-threatening. Aycox treated King at the scene and then transported him to the hospital. King never discussed the details surrounding the shooting with Aycox or his team.

Detective Pat Henz was dispatched to the scene at approximately 6:30 a.m. Upon his arrival, the scene had been secured, King had been transported to the hospital, and no other witnesses were present. After obtaining a search warrant, Detective Henz returned to the scene and, together with Officer Walles, collected evidence. Walles was in charge of the actual collection of the evidence. Of particular relevance were the fingerprints Walles lifted from the front driver's door and the front passenger's door of King's car found abandoned a few block from the crime scene. After collecting the fingerprints, Walles placed them on cards, secured them in an envelope, and sent them to the crime lab.

David Mallen, a fingerprint examiner, testified in detail as to the process for lifting fingerprints from latent objects and running any prints found against national and state databases (the "AFIS" system) for known suspects. During Mallen's testimony, the State introduced Exhibit 39 into evidence. Mallen identified the exhibit as a sealed latent fingerprint envelope containing four "lift cards," marked as State's Exhibits 39A-D. A "lift card" is a card used to hold an individual fingerprint lifted from a crime scene. According to the labels on each of the lift cards, Mallen handled the cards on October 25, 2007. On that date, he determined that out of the four cards, there were two prints which were of the quality needed to search the AFIS system for a match, 39A and 39C. Mallen then performed a search on the two prints and recovered a list of candidates with

Appellant's name appearing as the number one match. Mallen compared the cards one on one with the candidates and found what he believed to be a match between Appellant and the print on lift card 39C. He sent the results to Tammy McLean, another latent fingerprint examiner, to perform a second comparison and verification.

Tammy McLean testified that she received Mallen's results, reviewed the prints, and she too found Appellant's prints matched those lifted from the vehicle. Outside the presence of the jury, McLean took a fresh set of fingerprints from Appellant which were marked and admitted as State's Exhibit 40. She examined the fingerprints found on State's Exhibits 39A-D and compared them to the prints taken at recess on Exhibit 40. She then testified that the prints found on State's Exhibits 39C and D matched those on Exhibit 40.

Because of the extent of King's injuries, Detective Henz waited three days before interviewing him at the hospital. Although he did not know who the shooter was, King provided Henz a description of the shooter: "black male, light-skinned, short, red shirt." He also provided Henz with a list of "street names" for people he knew were at the house the night of the shooting. Later, Detective Henz was also given the fingerprint identification information which linked Appellant to the crime.

On November 6, 2007, Henz took a series of photographs, including one of Appellant, and several potential witnesses to King. He showed King the photos in hopes of finding additional witnesses and not so that King could pick out any one person. When King saw the photo of Appellant, and without any hesitation, he said, "This is the one that shot me." King then wrote out a witness statement in Detective Henz's presence. At trial, in open court, King identified Appellant as the shooter.

**DOUBLE JEOPARDY**

Because of its effect on Issues One and Two, we initially address Issue Three in which Appellant challenges his convictions based on the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense of which the accused has previously been acquitted or convicted. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Littrell v. State*, 271 S.W.3d 273, 275 (Tex.Crim.App. 2008); U.S. CONST. amend V, XIV. It also protects an accused against multiple punishments for the same offense. U.S. CONST. amend V, XIV. Appellant contends, and the State concedes, that Appellant's convictions for both aggravated robbery and aggravated assault constitute multiple punishments for the same offense in violation of the double jeopardy clause.

To determine whether two crimes are the "same offense" for purposes of double jeopardy, we focus on the elements as alleged in the charging instrument. *Bigon v. State*, 252 S.W.3d 360, 370 (Tex.Crim.App. 2008). Under this approach, known as the "cognate-pleadings approach," the court looks to the facts and elements alleged in the charging instrument, and not solely to the statutory elements to determine whether there is a lesser-included offense of the greater offense charged. *Hall v. State*, 225 S.W.3d 524, 526 (Tex.Crim.App. 2007). Whether an offense is a lesser-included offense of the alleged offense is a question of law. *Id.* at 535.

Under the Texas Code of Criminal Procedure, an offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its

-5-

commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM.PROC.ANN. art. 37.09 (West 2006).

The indictment charged Appellant with aggravated robbery (Count I) and aggravated assault (Count II). We focus on the elements of the offenses and find that, as charged, the counts are facially duplicative. *See Brown*, 432 U.S. at 165; *Littrell*, 271 S.W.3d at 275. As charged, Count II (aggravated assault) is a lesser-included offense of Count I (aggravated robbery) and as such Appellant's conviction for aggravated assault violates double jeopardy. *See Littrell*, 271 S.W.3d at 275*; see also Watson v. State*, 605 S.W.2d 877, 884 (Tex.Crim.App. 1979); *Elizondo v. State*, No. 01-07-00743-CR, 2009 WL 276754 at *3 (Tex.App.--Houston [1st Dist.] Feb. 5, 2009, pet. ref'd)(mem. op., not designated for publication).

When a double jeopardy violation such as this occurs, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. *Bigon*, 252 S.W.3d at 372-73; *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex.Crim.App. 2006). Appellant was found guilty on both counts and sentenced to twenty-five years' imprisonment for each offense. However, since aggravated robbery, as charged, was a first degree felony, and aggravated assault, as charged, was a second degree felony, aggravated robbery is the more serious offense. We affirm the conviction and sentence as to Count I (aggravated robbery) and we reform the judgment to vacate the conviction for Count II (aggravated assault). *See Bignon*, 252 S.W.3d at 372-73; *Ex parte Cavazos*, 203 S.W.3d at 338. Issue Three is sustained.

**LEGAL AND FACTUAL SUFFICIENCY**

In Issues One and Two, Appellant argues that the great weight and preponderance of the credible evidence favors acquittal of aggravated robbery and aggravated assault. Because we hold that Appellant's conviction for both offenses violated double jeopardy, Appellant's arguments as to the evidentiary sufficiency of the aggravated assault conviction are now moot. Issue Two is overruled in its entirety. We thus address only the arguments with respect to Issue One, the aggravated robbery conviction.

*Standard of Review*

The Texas Court of Criminal Appeals recently addressed the issue of whether a meaningful distinction exists between legal and factual sufficiency standards so as to require a separate analysis by reviewing courts. *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010). The court compared the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307; 99 S.Ct. 2781; 61 L.Ed.2d 560 (1979) with the factual sufficiency standard articulated in *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996). *Id*. at 894. It noted that after several attempts to clarify *Clewis*, the two standards are "barely distinguishable." *Id.* at 894-95, 902, *referencing Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 8 n.8 (Tex.Crim.App. 2000). The court concluded that the only standard a reviewing court should apply when faced with a sufficiency challenge is the legal sufficiency standard. *Brooks*, 323 S.W.3d at 895. Having decided that no meaningful distinction exists between the two standards, the court overruled *Clewis* and its progeny. *Id*.

Under the *Jackson v. Virginia* standard, a reviewing court must consider all evidence in the light most favorable to the verdict, and, in doing so, determine whether a rational justification exists

for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 899, *citing Jackson v. Virginia*, 443 U.S. at 319. On appeal, a reviewing court must give deference to the jury's determinations as to the credibility and weight given to witness testimony because, as the trier of fact, the jury is the sole judge as to the weight and credibility of such evidence. *Id.* Therefore, if on appeal the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the prosecution and defer to that resolution. *Id*. at 899-900. Although deference should be given to a jury's findings on weight and credibility, in determining if the jury's finding of guilt is rational, the reviewing court must base its decision "on *all* the evidence." [Emphasis added]. *Brooks*, 323 S.W.3d at 907.

In applying *Brooks*, we review Appellant's sufficiency claims under the *Jackson v. Virginia* standard to determine whether, based on all the evidence, when viewed in a light favorable to the verdict, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899, 902, *citing Jackson v. Virginia*, 443 U.S. at 319.

*Applicable Law*

A person commits robbery if, in the course of committing theft with the intent to obtain or maintain control of another's property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX.PEN.CODE ANN. § 29.02 (West 2003). Aggravated robbery occurs when a person commits robbery as defined in Section 29.02 above, and additionally the robber: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death. TEX.PEN.CODE ANN. § 29.03. Under Section 1.07, the definition of a deadly weapon includes, "a

firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX.PEN.CODE ANN. § 1.07(a)(17)(A)(West Supp. 2010). Therefore, a firearm is statutorily defined as a deadly weapon. *See id.* The essential element of an aggravated robbery is the threat or fear of imminent bodily injury or death "generated simply by the presence of a deadly weapon, its use or exhibition being merely incidental to its presence." *Maxwell v. State*, 756 S.W.2d 855, 858 (Tex.App.--Austin 1988, pet. ref'd).

*Analysis*

Count I charged Appellant with aggravated robbery with a deadly weapon, to wit: a firearm. Although the indictment charged Appellant as to Count I in two alternate paragraphs, the State waived the second paragraph at trial, and only the first paragraph was submitted for jury determination. This paragraph alleged that, on or about October 11, 2007, Appellant did:

> intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, caused bodily injury to another, Christopher King, by shooting him with a firearm and the defendant used or exhibited a deadly weapon, to-wit: a firearm.

To establish the crime of aggravated robbery as charged, the State had to prove beyond a reasonable doubt the following elements: (1) Appellant; (2) while in the course of committing theft and with the intent to deprive the owner of that property; (3) intentionally or knowingly; (4) caused serious bodily injury; (5) to Christopher King; (6) by shooting King; (7) with a firearm. *See Robinson v. State*, 596 S.W.2d 130, 132 (Tex.Crim.App. 1980).

Appellant broadly contends that the evidence is insufficient to establish all elements of the crime charged and therefore the verdict was, "so manifestly unjust as to require a new trial being granted." But there is no dispute that on October 11, 2007, King was intentionally or knowingly shot

six times with a handgun causing him serious bodily injuries. Nor is there any dispute that the gun was a firearm and that King was shot in the course of a robbery. The only question presented is whether the evidence is sufficient to establish Appellant's identity beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

Appellant's entire complaint is contained in a single conclusory statement in which he argues that King's identification was impeached by the testimony of Detective Henz. The only reasoning offered for this contention is that when Detective Henz first spoke with King at the hospital, King said he did not know the perpetrator. Yet one month after the shooting, King positively identified Appellant as the shooter from a stack of photographs.

The jury is the sole trier of fact and as such it is in their discretion to determine the weight and credibility to give the evidence. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). While Officer Henz testified that King stated, "he did not know who the shooter was," he also testified that King gave a description of the shooter. It would be a reasonable inference then, that while King may not have been acquainted with the shooter, he saw him long enough to provide a description and reliable identification. Further, Henz testified that King later identified Appellant as the man who shot him while looking at a stack of photos. There was also testimony from King in which he identified Appellant as the man he played dice with, the same man who demanded King return his money and shot King when he refused.

The testimony of Officer Wallace, as well as that of fingerprint examiners David Mallen and Tammy McLean, further corroborate King's account of the robbery by affirmatively matching Appellant's fingerprints to those lifted from King's car. Based on all the evidence, a rational juror could have found the evidence sufficient to prove the element of identity beyond a reasonable doubt.

*See Jackson*, 443 U.S. at 319.  Therefore, we overrule Appellant's argument and affirm Appellant's conviction and sentence as to aggravated robbery.


April 6, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)