**Christopher Fitzgerald STEWART, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–05–246–CR.**

Court of Appeals of Texas, Fort Worth.

April 6, 2006.

Paul Francis, Arlington, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Debra Ann Windsor, Jesse McClure, Asst. Crim. Dist. Attys., Fort Worth, for appellee.

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

A jury convicted Appellant Christopher Fitzgerald Stewart of burglary of a habitation with a deadly weapon and assessed his punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. Appellant brings five points on appeal, challenging the trial court's denial of his motion to suppress identification, the legal and factual sufficiency of the evidence supporting the deadly weapon finding, the trial court's failure to instruct the jury on criminal trespass at the guilt phase, and the trial court's failure to properly instruct the jury on parole at the punishment phase. Because we hold that the evidence supporting the deadly weapon finding is legally insufficient, we modify the trial court's judgment to delete the deadly weapon finding. Because the trial court did not otherwise reversibly err, we affirm the trial court's judgment as modified.

### STATEMENT OF FACTS

Lilliana Cervantes was at her sister's home and heard a loud noise. She called out, but no one answered. When she opened a bedroom door, she saw Appellant. He put a pillowcase over her head,

and they went around the house as he demanded money. He led her into the kitchen, and she heard him get a knife. She uncovered her eyes slightly, and saw him holding a knife, but covered her eyes again as he turned around. Appellant did not threaten her with the knife. Appellant took two rings, her bracelet, the cordless phone batteries, a T-shirt, and the knife with him. When he left, Cervantes ran outside and flagged down a passing police car. That officer and another officer searched the house, and Cervantes gave a description of Appellant. Another officer reported that a man had been seen climbing over a fence and entering a wooded area not far from the site of the offense. Officer Rodriguez went to this nearby location and handcuffed Appellant as he came out of the wooded area. Cervantes was brought to the scene, and she identified Appellant. The police found a bracelet and cordless phone batteries in Appellant's pockets, but they did not find a knife.

Appellant was indicted for burglary of a habitation with a deadly weapon. The indictment also contained an enhancement allegation based on a previous felony conviction. Appellant moved to suppress the identification and all evidence recovered from his person, but the trial court denied both motions. Appellant entered a plea of not guilty, but he pled true to the enhancement allegation. At trial, the trial court admitted a photograph of the knife. Appellant objected to the lack of an instruction on criminal trespass in the jury charge at the guilt phase and requested that it be added. The trial court refused.

The jury convicted Appellant and returned an affirmative finding regarding the deadly weapon.

The jury charge at punishment did not contain all of the language in article 37.07, section 4(a) of the Texas Code of Criminal Procedure.[1] It omitted the sentence, "If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole."[2] No one objected to the jury charge at punishment. Appellant timely appealed.

## IDENTIFICATION

■ In his first point, Appellant argues that the trial court erred by denying his motion to suppress the out-of-court identification of Appellant because the police employed a one-man show-up that was impermissibly suggestive.

■ As the State points out, "a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law."[3] The issue is whether, if the procedure was impermissibly suggestive, it gave rise to a substantial likelihood of irreparable misidentification.[4] The *Neil* court suggested factors to consider in determining whether a procedure gives rise to a substantial likelihood of irreparable misidentification: (1) the witness's opportunity to view the actor, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the suspect, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and the confrontation.[5]

1. Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2005).

2. *See id.*

3. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

4. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

5. *Id.* at 199, 93 S.Ct. 375.

From a practical perspective, we note that although a one-man show-up does not in and of itself violate due process, it does carry with it a degree of suggestiveness. On the other hand, it also allows the police to quickly release a person who has been seized but is not the perpetrator.

When the police encountered Cervantes, she was in the front yard of her sister's house, which had just been burglarized. The police began an immediate search of the area and soon spotted Appellant. He ran when he saw the police and tried to escape through a wooded area, but one of the officers managed to grab him. Cervantes was brought to the scene of his arrest and identified Appellant. Approximately an hour had passed since the burglary. Appellant was wearing a shirt stolen from Cervantes's sister's house, and he had the batteries stolen from the telephone and Cervantes's bracelet in his pocket.

Cervantes had an opportunity to observe Appellant when he entered the house before he covered her eyes with a pillowcase, and she peeked at him during the burglary as he led her through the house. She testified that Appellant was in the home for some twenty-five to thirty minutes, and her description of him matched his actual appearance. After considering the appropriate factors, we hold that the trial court did not err by denying Appellant's motion to suppress the identification. We overrule Appellant's first point.

### LEGAL SUFFICIENCY OF THE EVIDENCE OF A DEADLY WEAPON

In his second point, Appellant contends that the evidence is legally insufficient to support the deadly weapon finding. The Texas Court of Criminal Appeals has explained,

> To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon, (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, and (3) that other people were put in actual danger.[6]

The jury found that Appellant used and exhibited a deadly weapon in the commission of the burglary, as alleged in the indictment. Because a knife is not a deadly weapon per se, the jury was instructed that a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[7]

Cervantes identified a photograph of a knife at trial. It was a steak knife with a serrated edge. Cervantes testified that her eyes were covered but that she heard Appellant get the knife. She would occasionally peek at Appellant, but Appellant had instructed her to keep her eyes covered.

While the evidence may be sufficient to show that the knife was capable of causing serious bodily injury or death, there is no evidence that in the manner of its use or its intended use it was capable of causing such injury. Appellant made no threats; there is no evidence that he put the knife near Cervantes's throat or anywhere near her body. As the State points out, Appellant made a menacing gesture with his hand toward Cervantes before he got the knife, but there is no testimony that he did so after he had the knife in his hand. Additionally, although Cervantes testified that she was scared because she

---

6. *Drichas v. State,* 175 S.W.3d 795, 798 (Tex. Crim.App.2005) (citations omitted).

7. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2005).

thought he was going to kill her, she testified that the simple fact that he entered the house created the fear. She also testified that after Appellant grabbed the knife, she did not get a chance to see him anymore because they were walking through the house. There is no evidence that Appellant walked through the house armed with a knife. Cervantes testified that she did not know what happened with the knife but that Appellant never threatened her with it, never tried to stab her, never tried to cut her, and never did anything to hurt her with the knife. Indeed, Appellant had placed a pillowcase over Cervantes's head to prevent her from seeing him. She saw the knife only because she peeked.

When the police seized Appellant, he no longer had the knife. It is unclear how long he carried the knife or when he disposed of it. It is unclear whether he used the knife to pry something open or for some other purpose.

Consequently, based upon the applicable standard of review,[8] we hold that the evidence is legally insufficient to show that in the manner of its use or intended use, the steak knife was capable of causing death or serious bodily injury. We sustain Appellant's second point. Because of our disposition of this point, we do not reach Appellant's third point contending that the evidence is factually insufficient.[9]

---

8. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Burden v. State,* 55 S.W.3d 608, 612 (Tex. Crim.App.2001); *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

9. *See* Tex.R.App. P. 47.1.

10. *See Salinas v. State,* 163 S.W.3d 734, 741 (Tex.Crim.App.2005); *Rousseau v. State,* 855

## CRIMINAL TRESPASS INSTRUCTION

■ In his fifth point, Appellant contends that the trial court erred by failing to instruct the jury on the lesser included offense of criminal trespass. A defendant is entitled to an instruction of a lesser included offense only when (1) the lesser offense is included within the proof necessary to establish the offense charged, and (2) evidence exists in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser included offense.[10]

■ Although criminal trespass is included within the proof of burglary of a habitation,[11] there is no evidence that if Appellant is guilty, he is guilty only of criminal trespass. Cervantes testified that Appellant told her that he was looking for money and valuables. Further, when the police found him, he had the property that was taken from inside the house. Consequently, we hold that the trial court did not err by overruling Appellant's requested instruction on criminal trespass. We overrule Appellant's fifth point.

## ARTICLE 37.07, SECTION 4(a) INSTRUCTION

■ In his fourth point, Appellant contends that the trial court erred by failing to properly charge the jury during the punishment phase on parole and good conduct time as required by the statute. The trial court was required to instruct the jury pursuant to article 37.07 section 4(a) of the Texas Code of Criminal Procedure.[12]

---

S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981).

11. *See Daniels v. State,* 633 S.W.2d 899, 900 (Tex.Crim.App.1982).

12. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a).

The trial court was required to include the statutory language verbatim with no deviation.[13] The trial court omitted the sentence, "If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole."[14] The State candidly concedes that the trial court erred by omitting the sentence. The State argues, however, that the error does not rise to the level of egregious harm, which is the standard we apply because no one objected to the charge at trial.[15] The State points out that, because the minimum confinement that Appellant could receive was five years,[16] the omitted sentence did not apply to him. We agree. Because Appellant was not eligible for a four-year sentence, we hold that he was not harmed by the error and that the error therefore did not rise to the level of egregious harm. We overrule Appellant's fourth point.

### CONCLUSION

Having sustained Appellant's second point, we modify the judgment to delete the deadly weapon finding. Having affirmed his first, fourth, and fifth points, we affirm the trial court's judgment as modified.

WALKER, J. filed a dissenting opinion.

SUE WALKER, Justice, dissenting.

Because the evidence is legally sufficient to support the jury's deadly weapon finding, I respectfully dissent. Viewing all the evidence in the light most favorable to the deadly weapon finding, a rational trier of fact could have found that Appellant Christopher Fitzgerald Stewart used a deadly weapon. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State,* 165 S.W.3d 691, 693 (Tex.Crim.App.2005). Giving full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, the evidence establishes that Stewart entered Lilliana Cervantes's sister's home, surprised Lilliana, took her into a bedroom and put a pillow case over her head, grabbed her hand "very tight," and immediately forced her to the kitchen where she peeked out of the pillow case hood and observed Stewart locate and pick up a serrated steak knife. *See Lane v. State,* 151 S.W.3d 188, 191–92 (Tex.Crim.App.2004) (noting that an appellate court considers reasonable inferences from the evidence when conducting a legal sufficiency review); *Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App.2003). A photograph of the knife was introduced into evidence. After arming himself with this knife, Stewart forced Lilliana to accompany him through the home as he selected items to steal.

A deadly weapon question was submitted to the jury pursuant to article 42.12, section 3(g) of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art.

**13.** *See Luquis v. State,* 72 S.W.3d 355, 363 (Tex.Crim.App.2002).

**14.** *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

**15.** *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996).

**16.** *See* TEX. PENAL CODE ANN. §§ 12.32 (Vernon 2003) (providing that the minimum confinement for a first-degree felony is five years), 12.42(b) (Vernon Supp.2005) (providing that the punishment for a second-degree felony when the defendant has one prior felony conviction is that of a first-degree felony), 30.02(c)(2) (Vernon 2003) (providing that burglary of a habitation is a second-degree felony).

42.12, § 3g(a)(2) (Vernon Supp.2005). Thus, the jury was asked whether it found that "Stewart, during the commission of the offense or during the immediate flight following the commission of the offense, used or exhibited a deadly weapon, to wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury," and the jury answered affirmatively. The majority concludes that legally insufficient evidence exists for a reasonable juror to determine beyond a reasonable doubt that the knife's manner of use or intended use was to cause serious bodily injury or death.[1]

Regarding the first question—whether the knife was a deadly weapon—as the majority points out, a knife is not a deadly weapon per se, and as such, the jury was instructed that a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2005) (defining a deadly weapon). The court of criminal appeals has held that "an object is a deadly weapon if the actor *intends* a use of the object in which it would be *capable* of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000) (emphasis added) (holding that "the mere carrying of a butcher knife during such a violent attack ... was legally sufficient to show that the butcher knife was a deadly weapon"). Factors to consider in determining whether the knife was capable of causing death or serious bodily injury include (1) the size, shape, and sharpness of the knife; (2) the manner in which the appellant used the weapon; (3) the nature or existence of inflicted wounds; (4) testimony of the knife's life-threatening capabilities; (5) the physical proximity between

the victim and the knife; and (6) the words spoken by the appellant. *See, e.g., Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex. Crim.App.1991); *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex.Crim.App.1985) (op. on reh'g); *Williams v. State*, 575 S.W.2d 30, 32 (Tex.Crim.App. [Panel Op.] 1979); *Garcia v. State*, 17 S.W.3d 1, 4 (Tex.App.Houston [1st Dist.] 1999, pet. ref'd); *see also Cossey v. State*, No. 02–05–00032–CR, 2006 WL 59507, at *3 (Tex. App.-Fort Worth Jan. 12, 2006, no pet.) (not designated for publication).

Regarding the second question—whether the appellant "used or exhibited" a deadly weapon during the criminal transaction the phrase—"used ... a deadly weapon" during the commission of the offense means only that the deadly weapon was employed or utilized in order to achieve its purpose. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App. 1989). This statutory language encompasses or extends to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony. *Patterson*, 769 S.W.2d at 941. Thus, one can "use" a deadly weapon without exhibiting it. *Id.*

Here, Lilliana's testimony and the photograph of the knife supply the only evidence of the knife's physical characteristics and of how Stewart used the knife. The photograph of the knife shows that it was a serrated steak knife. Lilliana testified that after Stewart gained physical control over her and covered her eyes with a pillowcase, Stewart directed her to the kitchen. Once in the kitchen, he obtained a knife. Lilliana testified that Stewart grabbed her very tightly and proceeded to take her through the house. Lilliana is from Mexico and does not speak English,

---

1. The majority concedes that evidence exists that the steak knife was capable of causing serious bodily injury or death, but not that it was capable of causing such injury or death in the manner of its use or intended use.

yet she testified that Stewart was mad, that he said "shut up," and that he repeatedly demanded money. The jury could reasonably infer from this evidence that the knife was capable of causing death or serious bodily injury in its manner of use or intended use. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *McCain*, 22 S.W.3d at 503.

Additionally, the jury could reasonably infer from this evidence that Stewart went to the kitchen first for the exact purpose of obtaining a knife, that he wanted a knife in his hand to facilitate the offense of stealing items, and that the knife was used by Stewart during the offense to ensure Lilliana's cooperation. The fact that Lilliana cooperated and thereby averted any need by Stewart to overtly threaten her or to cut her does not lessen his "use" of the knife to ensure his success in stealing the items he desired. *See McCain*, 22 S.W.3d at 503. Although Stewart did not exhibit the deadly weapon, he did use it.

Under a proper application of the legal sufficiency standard of review, the evidence is legally sufficient to support the jury's deadly weapon finding. Accordingly, I dissent.