COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-185-CR

CHRISTOPHER DARCEL APPELLANT

MOOREHEAD, A/K/A 

CHRISTOPHER MOOREHEAD

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) 

------------

Christopher Darcel Moorehead, a/k/a Christopher Moorehead appeals his conviction for burglary.  In two points, appellant complains that the trial court abused its discretion by refusing to suppress a witness’s out-of-court and in-court identifications of appellant because the identifications were the result of an impermissibly suggestive one-on-one police identification procedure that violated appellant’s right to due process.  We affirm.

Between 9:00 and 10:00 a.m. on December 6, 2004, twelve-year-old Hunter Monk was home alone and expecting an exterminator to come take care of a rat problem.  He was in the bathroom when he heard a “clink” somewhere in the house.  Hunter came out of the bathroom, saw a strange man standing in the house, and asked if he was the rat exterminator.  The man did not reply, started walking, and then ran out the double doors of the living room onto the patio.

The lights were on in the house, and before the man fled Hunter saw his face and eyes from a distance of about three feet.  Hunter noted that the man was a medium-skinned African-American and had acne on the right side of his face.  The man was wearing a black toboggan hat, black gloves, and a black coat, and was holding a black nylon bag.

Hunter followed the man, who jumped off the patio and slipped on the tile, which was slightly wet.  Hunter caught up to him and grabbed the man’s wrist.  The man struck Hunter on both sides of his face.  Then the man broke loose from Hunter and ran through the gate with Hunter in brief pursuit.  After a short chase by a passerby, a neighbor, and the police, appellant was apprehended.  Approximately five minutes after the chase began, Hunter identified appellant, who was in police custody and handcuffed, as the man he had encountered in his house.  At a pretrial hearing, Hunter identified appellant again and testified, “I noticed him whenever he walked in. . . .  He hasn’t changed since whenever he came into our house.”

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 2)  In reviewing the trial court’s decision, we do not engage in our own factual review.
(footnote: 3)  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 4)  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 5)  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.
(footnote: 6)
 A one-man show-up does not
, in and of itself, violate due process.
(footnote: 7)  The test for a due process violation is whether, considering the totality of the circumstances, 
the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification.
(footnote: 8)  Reliability is the critical question.
(footnote: 9)  If the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed reliable.
(footnote: 10)  In assessing reliability, courts apply five nonexclusive factors:  (1) the witness’s opportunity to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.
(footnote: 11)  When applied to this case, these factors show that Hunter’s identification of appellant was reliable and not the product of an impermissibly suggestive procedure.

Witness’s Opportunity To View The Criminal At The Time Of The Crime.
  Hunter had several opportunities to view the intruder at the time of the crime.  First, Hunter observed the man’s face for about two seconds inside his well-lit home, during daylight hours, at a distance of about three feet.  Then he observed the man’s profile for about four seconds from five to seven feet away while the man was walking, jumping, and slipping on the patio.  In addition, Hunter had a clear view of the man’s face for five more seconds after Hunter grabbed the man’s wrist.  The man then hit Hunter twice in the side of the face, stood there for another second, and ran off.

Witness’s Degree Of Attention.
  As described above, Hunter paid close attention to the man’s face and to what he was wearing.  Appellant asserts that “[i]t is logical to assume” that Hunter’s degree of attention was significantly altered and hampered after the man struck him in the face.  There is no evidence to support this assertion.  The man did not strike Hunter until after Hunter had had the opportunity to observe him in the house and on the patio at close-up range for more than ten seconds.  Hunter testified that he was upset after the man hit him and scared that the man might hit him again if Hunter continued chasing him.  Nonetheless, Hunter chased the man as he ran out of Hunter’s yard until a passerby and a neighbor—both in cars—took up the pursuit and called 9-1-1.

Accuracy Of The Witness’s Description.
  Hunter testified that, before being taken to identify the man, he described the man’s skin tone to police and said that he had acne on his face.  When appellant, who is African-American, was apprehended by police, he was wearing a black jacket and had a pair of gloves in his front pants pocket.  A photograph of appellant taken on the day he was arrested shows that he had dark spots on the right side of his face that could be pock marks or acne.

Level Of Certainty Demonstrated By The Witness At Confrontation.
  When Hunter was asked by police whether the man in their custody was the person who had broken into his house, Hunter replied that he was “100 percent sure” that it was.  Hunter testified at the pretrial hearing that he had recognized appellant.  Hunter further testified as follows:

Q.  If the police had had the wrong guy in custody whenever you came to that location, what would you have said when he asked you is this him?

A.  I would have said it is not the guy.

Q.  So it is not the fact that a police officer was standing nearby or the fact that the man had handcuffs that you said that was him?

A.  The reason I said that was him is because he was the guy that was in my house.

Appellant’s inference that Hunter was suggestible due to his youth is not supported by the record.  To the contrary, Hunter’s testimony at the pretrial hearing was articulate, unequivocal, and internally consistent.

Length Of Time Between The Crime And The Confrontation.
  Hunter testified that he was taken by police to view the man in their custody roughly five minutes after Hunter had lost sight of the suspect.

Having carefully reviewed the record, we hold that the totality of the circumstances reveals no substantial likelihood of misidentification despite the suggestive nature of the police identification procedure.
(footnote: 12)  Therefore, the trial court did not err by concluding that appellant’s due process rights were not violated and by refusing to suppress Hunter’s identification of appellant.  We overrule appellant’s points and affirm the trial court’s judgment.

PER CURIAM

PANEL F:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 24, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
see Loserth v. State,
 
963 S.W.2d 770, 771 (Tex. Crim. App. 1998)
 (applying 
Guzman
 standard to ruling on 
motion to suppress in-court identification).

3:
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

4:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

5:
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).

6:
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

7:
Garza v. State,
 
633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh’g); 
Stewart v. State,
 No. 02-05-00246-CR, 2006 WL 909967, at *2 (Tex. App.—Fort Worth Apr. 6, 2006, no pet. h.).

8:
Loserth,
 963 S.W.2d at 771-72; 
Stewart,
 2006 WL 909967, at *2.

9:
Loserth,
 963 S.W.2d at 772.

10:
Webb v. State,
 760 S.W.2d 263, 269 (Tex. Crim. App. 1988), 
cert. denied,
 491 U.S. 910 (1989).

11:
Loserth,
 963 S.W.2d at 772; 
Stewart,
 2006 WL 909967, at *2.

12:
See Loserth,
 963 S.W.2d at 772; 
Webb,
 760 S.W.2d at 269.