COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-185-CR

 

CHRISTOPHER
DARCEL                                                        APPELLANT



MOOREHEAD,
A/K/A 

CHRISTOPHER
MOOREHEAD

                                                                                                        

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1] 

 

                                              ------------

Christopher Darcel Moorehead,
a/k/a Christopher Moorehead appeals his conviction for burglary.  In two points, appellant complains that the
trial court abused its discretion by refusing to suppress a witness=s out-of-court and in-court identifications of appellant because the
identifications were the result of an impermissibly suggestive one-on-one
police identification procedure that violated appellant=s right to due process.  We affirm.








Between 9:00 and 10:00 a.m.
on December 6, 2004, twelve-year-old Hunter Monk was home alone and expecting
an exterminator to come take care of a rat problem.  He was in the bathroom when he heard a Aclink@ somewhere
in the house.  Hunter came out of the
bathroom, saw a strange man standing in the house, and asked if he was the rat
exterminator.  The man did not reply,
started walking, and then ran out the double doors of the living room onto the
patio.

The lights were on in the
house, and before the man fled Hunter saw his face and eyes from a distance of
about three feet.  Hunter noted that the
man was a medium-skinned African-American and had acne on the right side of his
face.  The man was wearing a black
toboggan hat, black gloves, and a black coat, and was holding a black nylon
bag.








Hunter followed the man, who
jumped off the patio and slipped on the tile, which was slightly wet.  Hunter caught up to him and grabbed the man=s wrist.  The man struck Hunter
on both sides of his face.  Then the man
broke loose from Hunter and ran through the gate with Hunter in brief
pursuit.  After a short chase by a
passerby, a neighbor, and the police, appellant was apprehended.  Approximately five minutes after the chase
began, Hunter identified appellant, who was in police custody and handcuffed,
as the man he had encountered in his house. 
At a pretrial hearing, Hunter identified appellant again and testified, AI noticed him whenever he walked in. . . .  He hasn=t changed since whenever he came into our house.@

We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.[2]  In reviewing the trial court=s decision, we do not engage in our own factual review.[3]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[4]  Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[5]  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.[6]













A one-man show-up does not,
in and of itself, violate due process.[7]  The test for a due process violation is
whether, considering the totality of the circumstances, the identification
procedure was so impermissibly suggestive that it gave rise to a very
substantial likelihood of irreparable misidentification.[8]  Reliability is the critical question.[9]  If the totality of the circumstances reveals
no substantial likelihood of misidentification despite a suggestive pretrial
procedure, subsequent identification testimony will be deemed reliable.[10]  In assessing reliability, courts apply five
nonexclusive factors:  (1) the witness=s opportunity to view the criminal at the time of the crime; (2) the
witness=s degree of attention; (3) the accuracy of the witness=s prior description of the criminal; (4) the level of certainty
demonstrated by the witness at the confrontation; and (5) the length of time
between the crime and the confrontation.[11]  When applied to this case, these factors show
that Hunter=s
identification of appellant was reliable and not the product of an
impermissibly suggestive procedure.

Witness=s Opportunity To View The Criminal At The Time Of The Crime.  Hunter had several
opportunities to view the intruder at the time of the crime.  First, Hunter observed the man=s face for about two seconds inside his well-lit home, during daylight
hours, at a distance of about three feet. 
Then he observed the man=s profile for about four seconds from five to seven feet away while
the man was walking, jumping, and slipping on the patio.  In addition, Hunter had a clear view of the
man=s face for five more seconds after Hunter grabbed the man=s wrist.  The man then hit
Hunter twice in the side of the face, stood there for another second, and ran
off.








Witness=s Degree Of Attention.  As described above, Hunter paid close
attention to the man=s face and
to what he was wearing.  Appellant
asserts that A[i]t is
logical to assume@ that Hunter=s degree of attention was significantly altered and hampered after the
man struck him in the face.  There is no
evidence to support this assertion.  The
man did not strike Hunter until after Hunter had had the opportunity to observe
him in the house and on the patio at close-up range for more than ten
seconds.  Hunter testified that he was
upset after the man hit him and scared that the man might hit him again if
Hunter continued chasing him. 
Nonetheless, Hunter chased the man as he ran out of Hunter=s yard until a passerby and a neighborCboth in carsCtook up the
pursuit and called 9-1-1.

Accuracy Of The Witness=s Description.  Hunter testified that, before being taken to
identify the man, he described the man=s skin tone to police and said that he had acne on his face.  When appellant, who is African-American, was
apprehended by police, he was wearing a black jacket and had a pair of gloves
in his front pants pocket.  A photograph
of appellant taken on the day he was arrested shows that he had dark spots on
the right side of his face that could be pock marks or acne.

Level Of Certainty
Demonstrated By The Witness At Confrontation.  When Hunter was asked by police whether the
man in their custody was the person who had broken into his house, Hunter
replied that he was A100 percent
sure@ that it was.  Hunter testified
at the pretrial hearing that he had recognized appellant.  Hunter further testified as follows:

Q.  If the police had had the wrong guy in
custody whenever you came to that location, what would you have said when he
asked you is this him?

 

A.  I would have said it is not the guy.

 

Q.  So it is not the fact that a police officer
was standing nearby or the fact that the man had handcuffs that you said that
was him?

 

A.  The reason I said that was him is because he
was the guy that was in my house.








Appellant=s inference that Hunter was suggestible due to his youth is not
supported by the record.  To the
contrary, Hunter=s testimony
at the pretrial hearing was articulate, unequivocal, and internally consistent.

Length Of Time Between The
Crime And The Confrontation.  Hunter testified that he was taken by police
to view the man in their custody roughly five minutes after Hunter had lost
sight of the suspect.

Having carefully reviewed the
record, we hold that the totality of the circumstances reveals no substantial
likelihood of misidentification despite the suggestive nature of the police
identification procedure.[12]  Therefore, the trial court did not err by
concluding that appellant=s due
process rights were not violated and by refusing to suppress Hunter=s identification of appellant. 
We overrule appellant=s points and affirm the trial court=s judgment.

 

PER CURIAM

PANEL F: 
CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
August 24, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see Loserth v.
State, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998) (applying Guzman
standard to ruling on motion to suppress in-court identification).





[3]Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).





[4]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).





[5]Johnson
v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).





[6]Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652‑53.





[7]Garza
v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op.
on reh=g); Stewart
v. State, No. 02-05-00246-CR, 2006 WL 909967, at *2 (Tex. App.CFort
Worth Apr. 6, 2006, no pet. h.).





[8]Loserth, 963
S.W.2d at 771-72; Stewart, 2006 WL 909967, at *2.





[9]Loserth, 963
S.W.2d at 772.





[10]Webb
v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988), cert.
denied, 491 U.S. 910 (1989).





[11]Loserth, 963
S.W.2d at 772; Stewart, 2006 WL 909967, at *2.





[12]See
Loserth, 963 S.W.2d at 772; Webb, 760 S.W.2d at
269.