**Opinion issued February 20, 2014**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-11-00647-CR

———————————

**SIMON BAZILLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1261252**

---

### MEMORANDUM OPINION

Appellant Simon Bazille appeals his conviction for aggravated robbery. We affirm.

## BACKGROUND

Complainant Ismael Del Rio testified that, in the early morning hours of April 20, 2010, he stopped on the way home from a friend's house to make an ATM deposit. He left his truck running with the headlights on when he got out so he could see his way. Before he could complete the deposit, he was approached from behind by someone who put a gun in his back and said, "This is for real. It is not a joke. You better give me the money or I am going to kill you." Del Rio spun around, looked down at the gun and then up at the robber's face. He focused on the robber's face and was able to describe his appearance, i.e., slim, approximately six feet tall, and African American, as well as what he was wearing, i.e., dark-jeans, a white shirt, and a black New York Yankees cap. In court, he identified appellant as the person who robbed him.

Del Rio gave appellant the money in his hands and appellant ordered him to take more money out with his ATM card. Del Rio explained that he could not, because he did not have any money in the bank. That upset appellant, who then demanded Del Rio turn over his cell phone and wallet. Appellant then jumped into Del Rio's truck and sped off. Del Rio saw a police car across the street and ran out to flag it down.

Lieutenant J. Rabalais with the Harris County Precinct Three Constable's Office testified that he noticed a disturbance at the bank while driving by. He saw

2

a truck speed away from the bank and Del Rio waving his arms. Rabalais pulled up close enough to hear Del Rio tell him that he had been robbed and point in the direction appellant was driving away in his truck. As appellant and Rabalais pulled into a Palais Royal parking lot, another officer, Sergeant Casey Dobbins, assisted by blocking the parking lot exit. Appellant avoided the blocked exit by driving through some bushes and jumping the curb back out onto the street. Appellant continued speeding and driving erratically.

Both Rabalais and Dobbins took up the chase, but Rabalais was temporarily delayed when his path was blocked by another car. Dobbins continued to pursue appellant, and appellant shot at him repeatedly. When appellant stopped abruptly and turned into an apartment complex, Dobbins did not follow him, as he was concerned about not yet having back up. A moment later, he heard a crash. When Rabalais caught up to Dobbins, they entered the complex together and found Del Rio's empty truck crashed into a dumpster.

At this point, other officers were arriving to set up a perimeter around the complex. A canine unit was brought in, and the dog helped police track from the crashed truck to a nearby spot where they located a Yankees baseball cap and two cell phones, one of which was Del Rio's.

Police apprehended some people between the bank where the robbery took place and the apartment complex where Del Rio's truck was found. They were

3

brought to the parking lot of the apartment complex and Del Rio, who viewed them from his seat in the back of a patrol car, indicated that none of them were involved in the robbery.

Based on information Rabalais and Dobbins received from a witness who approached them at the scene, they began walking to the witness's apartment. The witness walked with them until they spotted appellant knocking on her apartment door; then the witness screamed and ran off. Based on the information Dobbins had from the witness, he believed that appellant was the suspect they had been pursuing. Dobbins arrested him and identified appellant in court as the same person he had arrested.

Appellant did not have a gun on his person. The police searched the inside of the apartment, and briefly detained its occupants until they could verify that none of them were involved in the robbery.

Deputy R. Rodriquez with the Harris County Precinct Three Constable's Office testified that he took Del Rio to the police substation to get his statement. Rodriquez then took Del Rio back to the apartment complex to look at appellant as a potential suspect. As when shown the previous suspects, Del Rio stayed in the back seat of the patrol car while appellant was brought near the car. Del Rio "positively indentif[ied] him a hundred percent" as the person who had robbed him.

4

Finally, the jury was shown a surveillance video of the robbery. The video revealed that the person who robbed Del Rio had a distinctive tattoo on his right arm that is consistent with a tattoo the jury viewed on appellant's right arm. The video also shows the robber wearing a black chain with a key on it. When appellant was booked into the jail, he was wearing jeans, a white muscle shirt, and a black chain with a key on it.

The jury found appellant guilty of aggravated robbery, and the court sentenced him to thirty years' confinement.

## ISSUES ON APPEAL

1. **"The trial court erred when it violated due process in issuing a verdict that resulted from improper identification of appellant."**

2. **"The trial court erred when it issued a verdict based on legal insufficiency [sic] of aggravated robbery."**

3. **"The trial court erred when it issued a verdict that resulted from appellant being deprived of effective assistance of counsel during trial."**

## IDENTIFICATION & SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant argues "[b]ased on the evidence and testimony, Appellant's arrest and conviction was a direct result of improper identification; Appellant was simply in the wrong place at the wrong time." According to appellant, "[w]hen identification is questionable, the charged offense must be supported by additional evidence connecting Appellant to the alleged criminal

offense." Appellant asserts that he was not "property identified, never connected with the crime, and no evidence was found on him or the items associated with the criminal offense." He claims that Del Rio hesitated and "fail[ed] to conclusively identify Appellant as the perpetrator," and emphasizes the lack of physical evidence tying him to the robbery.

In his second issue, appellant challenges the legal sufficiency of the evidence that he committed aggravated robbery. As with his first issue, he focuses on the alleged "issue of improper identification" and emphasizes that the "State's witnesses could not identify who was shooting."

In response, the State argues that appellant "never challenged or objected to the testimony regarding his identification in the trial court," thereby failing to preserve argument that the "show-up" identification violated his right to due process. The State further argues that, applying the proper legal sufficiency review, there was ample evidence to support the jury's finding that appellant was the one who committed the aggravated robbery.

**A. Standard of Review and Applicable Law**

In resolving a sufficiency-of-the-evidence challenge, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

6

2781, 2789 (1979); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In reviewing the evidence, an appellate court must defer to the jury's determinations as to credibility and the weight to be afforded different pieces of evidence. *Brooks*, 323 S.W.3d at 899 (*citing Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, a person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). One way a robbery becomes aggravated is if the robber "uses or exhibits a deadly weapon." *Id*. § 29.03(a)(2).

**B. Analysis**

Appellant's first two issues require us to evaluate the sufficiency of the evidence identifying him as the person who committed aggravated robbery. Appellant takes issue with the "one-on-one" show-up procedure used for Del Rio to identify him.

"While they are often criticized, one-on-one showups are not violative of due process as a matter of law." *Holder v. State*, 837 S.W.2d 802, 804 (Tex. App.—Austin 1992, pet. ref'd); *see Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 382 (1972); *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (opinion on rehearing). The question that must be answered in each case is whether

7

the suggestiveness inherent in the procedure was such as to give rise to a substantial likelihood of irreparable misidentification. *Neil*, 409 U.S. at 198–99, 93 S. Ct. at 381–82; *Jackson v. State*, 657 S.W.2d 123, 127 (Tex. Crim. App. 1983); *Capello v. State*, 775 S.W.2d 476, 482 (Tex. App.—Austin 1989, pet. ref'd). "Among the factors to be considered in making this determination are: the opportunity of the witness to view the criminal at the scene; the witness' degree of attention; the accuracy of the witness' prior description of the accused; the level of certainty demonstrated at the confrontation; and the length of time between the crime and the confrontation." *Capello*, 775 S.W.2d at 483; *see also Garza*, 633 S.W.2d at 512 (such a procedure may be appropriate when the confrontation occurs at the scene of the crime shortly after the offense while the witnesses' memories are still fresh); *Stewart v. State*, 198 S.W.3d 60, 63 (Tex. App.—Fort Worth 2006, no pet.) ("[A]lthough a one-man show-up does not in and of itself violate due process, it does carry with it a degree of suggestiveness. On the other hand, it also allows the police to quickly release a person who has been seized but is not the perpetrator.").

Contrary to appellant's arguments, the record does not suggest that anything about the procedure led to a substantial likelihood of misidentification. *Neil*, 409 U.S. at 198–99, 93 S. Ct. at 381–82. Del Rio testified that he got a good look at appellant's face during the robbery and he was able to describe his appearance and

8

clothes. He testified that he eliminated several other potential suspects when they were shown to him at the complex. In contrast, he immediately recognized and positively identified appellant. Del Rio's identification took place within a few hours after the robbery. Finally, the bank's surveillance video showed the perpetrator had a tattoo, clothes, and a key chain that is consistent with appellant's.

We likewise reject appellant's sufficiency-of-the-evidence challenge. "A conviction for aggravated robbery may be based on the testimony of a single eyewitness," *Smith v. State*, __ S.W.3d __, 2013 WL 5989498, at *3 (Tex. App.—San Antonio Nov. 13, 2013, no pet. h.), and "circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Here, appellant's conviction is supported by unequivocal eyewitness testimony identifying him as the person committing robbery. Appellant was also found in response to a witness tip in the same apartment complex where Del Rio's crashed vehicle and cell phone—as well as a cap worn by the robber—was found. The video recording of the robbery reflects similarities between the perpetrator on tape and appellant. We overrule appellant's first and second issues.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, appellant argues that he is entitled to a new trial because he received ineffective assistance of counsel. Specifically, he complains that defense counsel at trial did not call exculpatory witnesses or object "in a proper

manner" to the admission of the footage and photos from the ATM surveillance cameras. Appellant asserts that "[t]here is simply no rational trial strategy involved when the defense counsel fails to call exculpatory witnesses to trial." He further contends that, had she investigated the case more fully, called witnesses, and made proper objections, "it is likely the result of the trial would have been different."

The State responds that because there is nothing in the record regarding trial court's preparation and investigation, appellant has failed to overcome the presumption of effective assistance of counsel. Specifically, the State notes that appellant has not identified what witnesses he believes should have been called, has not demonstrated that those witnesses would have been available to testify, and has not shown that any such testimony would have benefited his defense. The State also contends that appellant cannot show ineffective assistance for failing to "properly" object to the admission of the ATM surveillance video without demonstrating that the video would have been inadmissible.

### A. Standard of Review and Applicable Law

To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

10

*Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). A defendant has the burden to establish both of these prongs by a preponderance of the evidence, and a failure to make either showing defeats an ineffectiveness claim. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101.

We cannot speculate beyond the record provided, so any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Because the record is usually underdeveloped, direct appeal is often an inappropriate forum in which to bring this type of claim. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). The necessary record is best developed in a hearing on a motion for new trial or by application for a writ of habeas corpus. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998)

"An attorney's failure to investigate or present witnesses will be a basis for establishing ineffective assistance of counsel only where it is shown that the witnesses would have been available and that the presentation of the evidence would have benefitted appellant." *Pinkston v. State*, 744 S.W.2d 329, 332 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (citing *Coble v. State*, 501 S.W.2d 344 (Tex. Crim. App. 1973)). "Failure to object to admissible evidence does not constitute ineffective assistance of counsel." *Lee v. State*, 29 S.W.3d 570, 579–80 (Tex. App.—Dallas 2000, no pet.); *see also Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012) ("The failure to object to proper questions and admissible testimony . . . is not ineffective assistance.").

## B. Analysis

Appellant did not file a motion for new trial. The record is silent about any additional potential witnesses and the availability or alleged substance of their proposed testimony. Similarly, appellant presents no argument or authority establishing that the ATM surveillance tape was not admissible evidence. *See Reavis v. State*, 84 S.W.3d 716, 719 (Tex. App.—Fort Worth 2002, no pet.) (properly authenticated security videotape admissible). Accordingly, on this record, appellant cannot overcome the presumption that his counsel rendered effective assistance.

**CONCLUSION**

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

13